UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ILAI KANUTU KOONWAIYOU,<br><br>            Plaintiff,<br><br>    v.<br><br>ANTONY J. BLINKEN et al.,<br><br>            Defendants. | CASE NO. 3:21-cv-05474-DGE<br><br>ORDER ON MOTION FOR ATTORNEY FEES AND COSTS (DKT. NO. 37) |

This matter comes before the Court on Plaintiff's motion for attorney fees and costs. (Dkt. No. 37.)  For the reasons discussed below, the motion is GRANTED in part.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a resident of American Samoa and the United States, was born in Western Samoa in 1967.  (Dkt. No. 6 at 3.)  Plaintiff's father was a citizen of Western Samoa and his mother is now a U.S. national.  (*Id.*)

The statutory scheme in place when Plaintiff was born required that a child born abroad have two U.S. national parents to obtain derivative U.S. nationality at birth.  *Koonwaiyou v.*

*Barr*, 830 F. App'x 566, 567 (9th Cir. 2020). In 1986, Congress changed the requirements for obtaining derivative U.S. nationality for children born abroad, such that it was enough to have one U.S. national parent rather than two, as long as the U.S. national parent could satisfy certain physical presence requirements. *Id.*

Congress made this change retroactive, but for those like Plaintiff born under the previous regime, Congress imposed the additional requirement that U.S. national status "shall not be considered to be conferred upon [a] person until the date the person establishes to the satisfaction of the Secretary of State" that they meet the requirements of 8 U.S.C. § 1408(4). *Id.*

In 2006, the Department of Homeland Security ("DHS") began removal proceedings against Plaintiff. (Dkt. No. 6 at 7.) Plaintiff asserted he was a U.S. national and was not subject to removal. (*Id.*) An immigration judge agreed with Plaintiff and terminated his removal proceedings, finding Plaintiff was born to a U.S. national mother who met the physical presence requirements of 8 U.S.C. § 1408, making Plaintiff himself a U.S. national and therefore not subject to removal. (*Id.*) DHS appealed the judge's ruling to the Board of Immigration Appeals ("BIA"), which remanded the case to the immigration judge. (*Id.*) The parties jointly moved to administratively close the case in 2008 after Plaintiff was imprisoned for child sex abuse. (*Id.*)

In 2019, after Plaintiff finished serving his sentence, DHS re-opened removal proceedings. (*Id.*) Plaintiff again asserted U.S. nationality, but the immigration judge denied Plaintiff's motion and ordered him removed to Western Samoa. (*Id.*) Plaintiff appealed the decision to the BIA, which dismissed his appeal and refused to accept his claim of U.S. nationality, asserting that only the Secretary of State could confer U.S. national upon Plaintiff. (*Id.* at 8.) Plaintiff filed a petition for review with the United States Court of Appeals for the Ninth Circuit, which denied his petition on December 4, 2020. (*Id.*)

The Ninth Circuit found that for an individual to establish he or she meets the requirements of 8 U.S.C. § 1408(4), they must first apply for a U.S. passport or Consular Report of Birth Abroad. *Koonwaiyou*, 830 F. App'x at 567. The Ninth Circuit found Plaintiff could not be a U.S. national because he had not done so. *Id.* at 567. The Ninth Circuit found this provision was a "prerequisite for obtaining U.S. nationality rather than an optional mechanism for clarifying one's status." *Id.*

On January 21, 2021, Plaintiff applied to the State Department for a certificate of noncitizen national status.[1] (Dkt. No. 6 at 8.) On February 26, 2021, the State Department denied Plaintiff's application because Plaintiff's mother did not acquire nationality until after his birth. (*Id.*)

On August 16, 2021, Plaintiff filed a complaint in this Court. (Dkt. No. 6.) Plaintiff sought a declaration that the State Department's interpretation of 8 U.S.C. § 1408(4) was erroneous and that he was wrongfully denied a certificate of noncitizen national status. (*Id.* at 9.) On October 25, 2021, Defendants filed a motion to dismiss Plaintiff's complaint. (Dkt. No. 12-1.)

On March 3, 2022, the Court granted Defendants' motion. (Dkt. No. 22.) The Court found the 1986 amendment to Section 1408(4) included proviso language limiting Section 1408(4)'s application to persons, such as Plaintiff's mother, born before the amendment. (*Id.* at 1.) The Court therefore found Plaintiff's mother's U.S. national status was limited to the date it

---

[1] Applying for a certificate of noncitizen national status appears to be equivalent to applying for a U.S. passport. "As the [State] Department has received few requests, there is no justification for the creation of a non-citizen national certificate … [t]herefore, the Department determined that those who would be eligible to apply for such a certificate may instead apply for a United States passport that would delineate and certify their status as a national but not a citizen of the United States." https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/us-citizenship/Certificates-Non-Citizen-Nationality.html

was conferred and was not retroactive to her date of birth. (*Id.* at 2.) Therefore, because Plaintiff's mother was not a U.S. national when Plaintiff was born, Plaintiff was not a U.S. national at birth. On March 15, 2022, Plaintiff appealed the Court's judgment. (Dkt. No. 26.)

On June 7, 2023, the Ninth Circuit unanimously held the text of the 1986 amendments "makes clear" that Congress intended for the amendments to apply retroactively and to bestow the same U.S. national status to those born before, on, or after the date of enactment. *Koonwaiyou v. Blinken*, 69 F.4th 1004, 1012 (9th Cir. 2023). The Ninth Circuit found this interpretation was supported by an uncodified procedural provision of the 1986 amendments, similar provisions in the Immigration and Nationality Act of 1952 ("INA"), the statute's purpose, and the available legislative history. *Id.* The Ninth Circuit reversed the Court's judgment and remanded this case for further proceedings. *Id.*

On November 16, 2023, the Court granted a stipulated motion to remand this case to the State Department with instructions to re-adjudicate Plaintiff's application for a passport in a manner consistent with the Ninth Circuit's decision. (Dkt. No. 36.) The Court's order directed the State Department to either issue a decision or request additional evidence within 60 days of receiving Plaintiff's new application. (*Id.*) The Court's order dismissed this case without prejudice and directed Plaintiff to file any motion for fees and costs within 30 days. (*Id.*) On December 15, 2023, Plaintiff filed a motion for attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). (Dkt. No. 37.)

## II. LEGAL STANDARD

EAJA authorizes federal courts to award attorney fees, court costs, and other expenses when a party prevails against the United States. *Hardisty v. Astrue*, 592 F.3d 1072, 1076 (9th Cir. 2010). The purpose of EAJA is to "eliminate for the average person the financial

disincentive to challenge unreasonable governmental actions." *INS v. Jean*, 496 U.S. 154, 163 (1990).

"For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002); 28 U.S.C. § 2412(d)(1)(A).

### III. DISCUSSION

#### A. Prevailing Party

A "prevailing party" is one who "has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). To qualify as a prevailing party for purposes of EAJA, a Plaintiff's action must have: (1) resulted in a material alteration in the parties' legal relationship; and (2) that alteration must have been judicially sanctioned. *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005).

1. <u>Material Alteration</u>

Plaintiff argues he is the prevailing party in this case because the Ninth Circuit's decision required Defendants to change their position regarding Plaintiff's eligibility for U.S. national status. (Dkt. No. 37 at 5.) Plaintiff contends the Court's remand order satisfies the prevailing party requirement. (*Id.* at 6.) Defendants contend Plaintiff does not qualify as a prevailing party because he has not received his requested relief—a declaration of U.S. national status—or a court order requiring Defendants to take an action they were not otherwise required to take. (Dkt. No. 49 at 4.)

The material alteration in the legal relationship of the parties must be relief that the would-be prevailing party sought, for "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009) (internal citation omitted). The material alteration must consist of actual relief, not merely a determination of legal merit. *Id.* "[A] favorable determination on a legal issue, even if it might have put the handwriting on the wall, is not enough by itself." *Citizens for Better Forestry v. U.S. Forest Serv.*, 567 F.3d 1128, 1133–1134 (9th Cir. 2009).

"The form in which the relief comes is less important than that it be the relief the plaintiff sued to get." *Id.* The relief "need not be of 'precisely the same character as the relief sought in the complaint' so long as it 'serves the goals of the claim' and 'require[s] defendants to do something they otherwise would not have been required to do.'" *Wood v. Burwell*, 837 F.3d 969, 975 (9th Cir. 2016) (internal citation omitted).

Here, the Ninth Circuit's decision does not automatically grant Plaintiff the relief he ultimately seeks—U.S. national status—nor does this Court's remand order. Nevertheless, Defendants' rationale for denying Plaintiff's claim—that Plaintiff's mother did not acquire nationality until after his birth—is invalid in light of the Ninth Circuit's unanimous decision. This finding is more than a mere determination that Plaintiff's claim has legal merit. Assuming Plaintiff meets all other requirements for U.S. national status, the Ninth Circuit's finding likely compels a finding that Plaintiff is a U.S. national. *See Koonwaiyou*, 69 F.4th at 1012 ("Our interpretation leads us to conclude that Koonwaiyou's mother's non-citizen national status extends back to her birth and, as a result, that he qualifies for non-citizen national status too.") The Ninth Circuit's order forces Defendants to do something they otherwise would not have to

do; namely re-adjudicate Plaintiff's claim for U.S. nationality when Defendants' rationale for denying the claim is no longer valid.

Accordingly, the Court finds the Ninth Circuit's order and the Court's order remanding this case to the agency advanced Plaintiff's litigation goal and materially altered the relationship between the parties.  *See Carbonell,* 429 F.3d at 900 (a litigant can be a prevailing party even if he has not obtained affirmative relief in his underlying action); *Li v. Keisler*, 505 F.3d 913, 918 (9th Cir. 2007) ("[T]he Circuit Mediator's remand orders . . . advanced the goals sought by petitioners, and constituted material alterations of the parties' legal relationships.").

       2. <u>Judicial Sanction</u>

The material alteration in the relationship between the parties must also be stamped with some "judicial imprimatur."  *Carbonell*, 429 F.3d at 901.  "Judicial imprimatur can come in the form of an enforceable judgment on the merits or a court-ordered consent decree . . . but those are not the exclusive means of satisfying the requirement."  *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013).  "Other court-approved actions will suffice, provided they entail a judicial determination that the claims on which the plaintiff obtains relief are potentially meritorious."  *Id.*

The Court finds its order remanding this case to the agency for re-adjudication of Plaintiff's application, pursuant to the parties' stipulation, provides sufficient judicial sanction for Plaintiff to be regarded as the prevailing party.  When a district court incorporates a voluntary stipulation agreed to by the parties into an order, that order is stamped with sufficient judicial imprimatur for the litigant to qualify as a prevailing party for the purpose of awarding attorney's fees.  *Carbonell*, 429 F.3d at 900–901.  A stipulated remand requiring the agency to adjudicate a plaintiff's case within a specified time frame judicially sanctions the material alteration in the

relationship between the parties. *See e.g., Rashid v. Dep't of Homeland Sec.,* Case No. 2:14-CV-2109-JAM-KJN, 2017 WL 4959430, at *6 (E.D. Cal. Nov. 1, 2017) (collecting cases); *see also Equihua-Equihua v. Sessions*, 719 F. App'x 580, 582 (9th Cir. 2017) (an order holding the case in abeyance "pursuant to the stipulation of the parties" was sufficient to confer judicial imprimatur on the material alteration of the parties' relationship).

Moreover, the stipulated remand awards "much of the relief the plaintiff sought" by requiring Defendants to re-adjudicate Plaintiff's U.S. national status in the context of the Ninth Circuit's decision. *Klamath*, 589 F.3d at 1031. The Ninth Circuit's decision appears to compel a finding that Plaintiff was a U.S. national from birth, which is the result Plaintiff has sought from the beginning.

### B. Substantially Justified

The burden is on the government to establish substantial justification for its position. *Flores v. Shalala*, 49 F.3d 562, 569–570 (9th Cir. 1995). This includes "both [its] litigation position and the underlying agency action giving rise to the civil action." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013). It also includes establishing a "reasonable basis both in law and fact." *Abela v. Gustafson*, 888 F.2d 1258, 1264 (9th Cir. 1989). In the end, the test for whether the government's position is substantially justified is one of "reasonableness." *League of Women Voters of Cal. v. FCC*, 798 F.2d 1255, 1257 (9th Cir. 1986); *Meier*, 727 F.3d at 870 (to be substantially justified, the government's position must have been justified "to a degree that could satisfy a reasonable person.").

"The government's failure to prevail does not raise a presumption that its position was not substantially justified." *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir. 1988). The test is not whether the government was correct, but whether it was "for the most part justified" in taking the

ORDER ON MOTION FOR ATTORNEY FEES AND COSTS (DKT. NO. 37) - 8

position that it did. *Meza-Vazquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021). "A position that was 'not contrary to clearly established law' is thus substantially justified." *Id.* (quoting *Li*, 505 F.3d at 919–20).

Defendants argue they maintained a "reasonable and substantially justified position" in the face of a "novel and complex legal question concerning the application of a specific statutory amendment." (Dkt. No. 49 at 6.) Defendants identify this Court agreed with its position, and argue the Ninth Circuit's disagreement does not make their position unjustified. (*Id.* at 8–10.)

That this Court previously agreed with Defendants' position is insufficient to find the Government's position was substantially justified. *See United States v. One 1984 Ford Van*, 873 F.2d 1281, 1282 (9th Cir. 1989) (While it is "no disparagement of a respected district judge if the circuit court's view of the law is different[,]" a district judge's initial agreement with the government is not conclusive as to whether the government's position was reasonable.). "[T]he fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified." *Pierce v. Underwood*, 487 U.S. 552, 569 (1988). "Conceivably, the Government could take a position that is not substantially justified, yet win[.]" *Id.*

Despite this Court's prior analysis and conclusions, the Ninth Circuit panel unambiguously concluded the statutory language at issue in this case was clear and that the Government's position was untenable. *Koonwaiyou*, 69 F.4th at 1012 ("We reject the Government's interpretation in favor of the *plain meaning* of the 1986 amendments. The text of the amendments *makes clear* that Congress intended for it to apply retroactively and to bestow the same status on those born before, on, or after the date of enactment[.] . . . Our interpretation is *also consistent with* similar provisions in the INA, with the statute's purpose, and with the

available legislative history.") (emphasis added).  Its decision weighs strongly in favor of finding the Government's position was not substantially justified.  *See Former Emps. of Invista, S.A.R.L. v. U.S. Sec'y of Lab*., 34 C.I.T. 781, 791 (2010) ("strong language criticizing the Government's position in an opinion discussing the merits of a key issue is evidence in support of an award of fees." ); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004) (same); *Marcus v. Shalala*, 17 F.3d 1033, 1038 (7th Cir. 1994) (finding no substantial justification when the Supreme Court held regulations were "manifestly contrary to the statute" and the Secretary's position was "unconvincing" and made "little sense").

   Plaintiff cites *Oregon Natural Resources Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992) for the proposition that the government's position is not substantially justified when it is contrary to the plain language of a statute and at odds with its legislative history. (Dkt. No. 36 at 6–7.)  The Court agrees.  While the Ninth Circuit did not issue its decision until long after the Government asserted its position, the Circuit panel unanimously found the statutory language and legislative history in this case were clear.

   Accordingly, Defendants have not met their burden to establish that their position was substantially justified.

   **C.  Enhanced Fees**

   Under EAJA, the Court may award "reasonable fees and expenses" to a prevailing party.  28 U.S.C. § 2412(b).  The EAJA includes a statutory cap for attorney fees of $125 per hour, unless the Court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.  28 U.S.C. § 2412(d)(2)(A).

Plaintiff asserts this case warrants enhanced fees. (Dkt. No. 37 at 8.) Plaintiff argues enhanced fees are appropriate in this case because Plaintiff's counsel had specialized experience and expertise in immigration cases that allowed Plaintiff to preserve his claims and ultimately prevail. (*Id.* at 8–10.) Defendants contend this case did not require specialized immigration knowledge, and that while it presented a complex legal question, the analysis turned on common canons of statutory construction. (Dkt. No. 49 at 12.)

Three requirements must be satisfied before the Court can award fees exceeding the statutory limit: (1) the attorney must possess distinctive knowledge and skills developed through a practice specialty; (2) those distinctive skills must be needed in the litigation; and (3) those skills must not be available elsewhere at the statutory rate. *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991).

In support of his motion for fees and costs, Plaintiff submitted a declaration from Matt Adams, who is an attorney of record in this case. (Dkt. No. 38.) Adams is Legal Director of the Northwest Immigrant Rights Project ("NWIRP") and has worked as an immigration attorney with that organization for the past 24 years. (*Id.*) Adams has extensive experience in immigration law, having litigated hundreds of cases before administrative tribunals and the federal courts. (*Id.*) Adams has received numerous awards for his work. (*Id.* at 6.) Adams' co-counsel, Aaron Korthuis, has worked as a staff attorney at NWIRP since 2018. (*Id.*)

Plaintiff also submitted declarations from attorneys Robert Pauw, Hilary Han, and Trina Realmuto. (Dkt. Nos. 39, 40, 41.)

Pauw is a co-founder and partner at the firm of Gibbs Houston Pauw. (Dkt. No. 39 at 1.) Pauw has been licensed to practice law in Washington State since 1983, and has practiced immigration law exclusively. (*Id.*) He has taught immigration law at the Seattle University

School of Law for over 25 years and has authored a textbook on litigating immigration cases in federal court.  (*Id.*)  He is a member of numerous professional organizations and has represented hundreds of clients in immigration cases before administrative tribunals and the federal courts.  (*Id.*)

Pauw opined that there is a shortage of attorneys in Washington State with the knowledge and skills required to handle immigration cases like this one.  (*Id.* at 4.)  Pauw further opined that Adams and Korthuis possess the skills needed to litigate "particularly complex" cases like this one, which raised an issue of first impression and required intimate knowledge of the INA.  (*Id.*)  Pauw stated the knowledge and skills of Plaintiff's counsel was "essential" to the outcome of this litigation, and that these skills are unavailable at EAJA's statutory rate.  (*Id.* at 5.)

Han has practiced immigration law exclusively since 1997.  (Dkt. No. 40 at 1.)  He has represented hundreds of clients in immigration cases before administrative tribunals and the federal courts.  (*Id.* at 1–3.)  Han opined that Adams is the premier immigration litigator in the state, if not the country, and is "incredibly well-respected" for his litigation skills.  (*Id.* at 3.)  Han opined that it would be impossible to find an attorney of comparable skill at the EAJA statutory rate, and that litigating this case required "more knowledge and expertise than most immigration litigators have."  (*Id.* at 4.)  He further opined that Adams' knowledge and expertise was essential to the successful outcome in this case.  (*Id.* at 4–5.)

Realmuto has practiced immigration law for more than 25 years, is a member of several professional organizations, and has received awards for her work.  (Dkt. No. 41 at 1.)  Realmuto has known and worked with Adams for 25 years and opined that he is one of the premier immigration attorneys in the country.  (*Id.* at 4–5.)  Realmuto has also worked with Korthuis and opined that he is a highly qualified immigration attorney and is among the small number of

attorneys capable of successfully litigating a case like this one. (*Id.* at 5.) Realmuto opined that Adams and Korthuis possessed the distinctive knowledge and specialized skills necessary for this case. (*Id.* at 6.) Realmuto stated she knew no other attorneys in Washington State who could have successfully litigated this case, and was not aware of any Washington attorneys with the skills and experience required for this case who would have taken the case for the statutory EAJA rate. (*Id.*)

Based on the declarations submitted by counsel for Plaintiff and attorneys Pauw, Han and Realmuto, the Court finds that Plaintiff's attorneys meet the requirements for an enhanced fee award under EAJA. Plaintiff's counsel clearly possesses distinctive knowledge and skills developed through many years of immigration law practice.

Defendants argue this case did not require distinctive skills. (Dkt. No. 49 at 12.) Defendants concede this case involved a "complex legal question" but contend the case had a straightforward procedural history and ultimately turned on "common canons of statutory construction." (*Id.*) The Court disagrees. This case had a lengthy procedural history, stretching back to 2006. In addition to proceedings in this Court, Plaintiff's case has been before administrative tribunals several times and before the Ninth Circuit twice. With respect to the complexity of this case, the Court finds persuasive the declarations of Pauw, Han, and Realmuto, who each stated that this was a difficult case that required the skills of experienced immigration counsel to resolve successfully. The Court agrees that resolution of this case required an intimate understanding of the INA and the ability to navigate complex questions concerning its application in the absence of clear authority from the Ninth Circuit. Accordingly, the Court finds the distinctive skills of Plaintiff's experienced counsel were needed to successfully resolve this case.

Defendants argue the declarations submitted by Plaintiff do not establish that the skills of Plaintiff's counsel were not available elsewhere at the statutory rate. (*Id.*) Defendants argue the declarations of Pauw, Han, and Realmuto to this effect were predicated on their opinions that this case required specialized immigration knowledge. (*Id.*) Because the Court agrees with Pauw, Han, and Realmuto that this case required specialized knowledge and experience, the Court also finds persuasive their opinions that there were no attorneys available who would take the case for the statutory EAJA rate.

Accordingly, the Court finds Plaintiff is entitled to fees in excess of the statutory cap.

**D. Reasonable Fees and Costs**

Plaintiff requests fees and costs totaling $88,316.61. (Dkt. No. 50 at 8.) Having found Plaintiff is entitled to enhanced fees, the Court must still determine whether Plaintiff's requested fees are reasonable.

The lodestar method is "the default principle for fee calculation in Washington." *See Brand v. Dep't of Labor & Indus.*, 989 P.2d 1111, 1119 (Wash. 1999). Washington law presumes a properly calculated lodestar figure represents reasonable compensation for counsel. *Henningsen v. Worldcom, Inc.*, 9 P.3d 948, 959 (Wash. Ct. App. 2000). The lodestar method multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).

    1. Reasonableness of Hourly Rate

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 866, 895 n.11 (1984).

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court may also rely on its own knowledge and experience in determining what rates are reasonable. *See Salyer v. Hotels.com GP, LLC*, Case No. C13-1966-RSL, 2015 WL 3893079, at *2 (W.D. Wash. June 23, 2015) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

In her declaration, Trina Realmuto asserted that the rates charged by Adams and Korthuis accurately reflect the market rate for complex federal class actions. (Dkt. No. 41 at 6.) Robert Pauw opined that a reasonable market rate for Washington attorneys with the background and experience of Adams and Korthuis was between $800 to $900 per hour and $400 to $500 per hour respectively. (Dkt. No. 39 at 5.)

In determining a reasonable rate, Plaintiff's counsel relies upon the *Laffey* matrix, which is "an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). The Ninth Circuit has questioned whether the *Laffey* matrix is an appropriate tool for determining attorney rates in the Western United States. "[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Id.* There are very few cases in

the Ninth Circuit applying the *Laffey* matrix to requests for EAJA fees.  See *Xiaosi Hu v. Munita*, Case No. 2:19-cv-01302-RAJ, 2020 WL 2199473 at *2 (W.D. Wash. May 6, 2020).

The Court will not rely on the *Laffey* matrix.  Instead, the Court finds persuasive the declaration of Robert Pauw, who opined that a reasonable rate for Adams was between $800 and $900 per hour, while a reasonable rate for Korthuis was between $400 and $500 per hour.  Based on Pauw's declaration and its own experience, the Court finds a rate of $850 per hour to be reasonable for Adams, and a rate of $450 per hour to be reasonable for Korthuis.

2. <u>Reasonableness of Hours Worked</u>

When submitting a motion for attorney fees, a prevailing party may submit records containing entries for hours that are "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

For the reasons discussed below, with one exception, the Court finds the hours worked by Plaintiff's counsel were reasonable.

3. <u>Reduction in Fees</u>

Defendants argue the fee award should be reduced because Plaintiff did not receive his requested relief.  (Dkt. No. 49 at 10.)  While Plaintiff has not yet received his desired relief—U.S. national status—he has moved significantly closer to his ultimate goal, in large part due to the skilled representation of his attorneys.

Defendants also contend the fee award should be reduced because Plaintiff's complaint contains a Fifth Amendment due process claim that was not addressed by the Court.  (*Id.*)  Where a plaintiff has obtained excellent results, his or her attorney should recover a full compensatory fee.  *Hensley*, 461 U.S. at 435.  In these circumstances the fee award should not be

reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. *Id.* A plaintiff who has won substantial relief "should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440. Plaintiff's due process claim was never litigated, and Plaintiff's attorney spent little to no time on it. (Dkt. No. 50 at 6.) The Court will not reduce Plaintiff's fee for this reason.

Defendant also asks the Court to deny Plaintiff fees incurred in preparing this motion. (Dkt. No. 49 at 10.) The Court sees no reason to reduce Plaintiff's requested fee for this reason. *Love,* 924 F.2d at 1497 ("[U]nder the EAJA, the prevailing party is automatically entitled to attorney's fees for any fee litigation once the district court has made a determination that the government's position lacks substantial justification.").

Defendants ask the Court to reduce Plaintiff's fee request for billing records that are unreasonably vague and for work done by individuals without identified positions. (Dkt. No. 49 at 11.) The entries identified by Defendants as vague describe meetings, legal research, citation checking and emails between Plaintiff's attorneys. (Dkt. No. 49-1 at 2.) None of these entries are vague enough to justify a reduction in fees. As for the individuals listed in Plaintiff's motion without identified titles, Plaintiff has clarified that those listed in the motion are all attorneys, with the exception of Sydney Maltese, who is a paralegal. (Dkt. No. 50 at 7 n. 1.)

Defendants ask the Court to reduce Plaintiff's recovery for clerical tasks. (Dkt. No. 49 at 11.) Defendants identify three line items that it contends are clerical tasks. (Dkt. No. 49-1 at 2.) Plaintiff concedes that one of these tasks—printing and binding a brief—is truly clerical. (Dkt. No. 50 at 7.) This task was performed by Maltese and took two hours. (Dkt. No. 37-4 at 5.) Applying the EAJA rate in effect at the time, the Court will reduce Plaintiff's recovery by $469.90 to account for this clerical work.

Defendants also argue the Court should discount hours for tasks not requiring specialized immigration knowledge. (Dkt. No. 49 at 12 n. 4.) Defendants cite no authority for the proposition that the Court should distinguish between specialized and non-specialized tasks when evaluating an enhanced fee award. The Court therefore rejects this argument.

### E. Fee and Costs Award

Between June 1, 2021 and now, Adams spent 14.8 hours working on this case, while Korthuis worked on the case for 110.2 hours. (Dkt. No. 50-1 at 2.) At the adjusted rate, Adams and Korthuis are entitled to $62,170 in fees. Plaintiff has also submitted an invoice for work done by other attorneys at the statutory EAJA rate totaling $20,932.89[2] and $401.17 in costs. (*Id.* at 3.) Added together, this results in a fee and costs award of $83,504.06. Subtracting $469.90 for clerical tasks results in a final fee and costs award of **$83,034.16**.

## IV.   ORDER

Plaintiff's motion for attorney fees and costs (Dkt. No. 37) is GRANTED in part. Plaintiff's total fee and costs award shall be **$83,034.16**.

Dated this 20th day of March, 2024.

David G. Estudillo
United States District Judge

---

[2] These rates are consistent with the applicable statutory maximum hourly rates under EAJA, adjusted for increases in the cost of living. https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/